IN RE INTEREST OF MAINOR T. AND ESTELA T.,
CHILDREN UNDER THE AGE OF 18 YEARS.
STATE OF NEBRASKA, APPELLEE, V.
MERCEDES S., APPELLANT.
674 N.W.2d 442

Filed January 16, 2004.    No. S-02-1229.

D. Milo Mumgaard, of Nebraska Appleseed Center for Law in the Public Interest, for appellant.

Robert J. Cashoili, Deputy Hall County Attorney, for appellee.

Rachel A. Daugherty, of Lauritsen, Brownell, Brostrom, Stehlik, Thayer & Myers, guardian ad litem.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## I. INTRODUCTION

On September 17, 2002, the Hall County Court, sitting as a juvenile court, entered an order terminating the parental rights of Mercedes S. to her minor children, Mainor T. and Estela T., pursuant to Neb. Rev. Stat. § 43-292(1) and (7) (Reissue 1998). The father of the children left the family shortly after Estela was born and is not a party to this action. Mercedes appeals the termination of her parental rights.

## II. BACKGROUND

Mercedes is the natural mother of Mainor and Estela, who are both U.S. citizens. In her brief, Mercedes states that she is a native Guatemalan. Mercedes claims she came to the United States in 1992 seeking asylum and moved to Grand Island in 2000, where she lived in a Guatemalan community and spoke a Mayan Indian dialect with fellow Guatemalans. Mercedes also states in her brief that she is illiterate and speaks no English and very little Spanish. The record indicates Mercedes does not understand English.

On March 22, 2001, Mercedes was arrested for striking Mainor. On the same day, both children were taken into protective custody. On March 23, the State filed a juvenile petition in the Hall County Court, alleging that Mainor and Estela, ages 6 and 4 respectively, were minors within the ambit of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1998). The petition alleged the children were (1) homeless or destitute, or without proper support through no fault of their parents; (2) lacking proper parental care by reason of the fault or habits of their parents; and (3) in a

situation that was dangerous to life and limb or injurious to their health or morals.

An affidavit from Lisa Kluck, a Child Protective Services worker, was filed with the court on March 23, 2001. Kluck averred that she had reviewed police reports showing that on March 22, the school psychologist had contacted the Grand Island Police Department concerning red line markings on Mainor's face. In response to questioning from the police, Mainor stated that Mercedes had hit him, which he described as "hit, hit, and hit," and that he had cried and then later watched television. Kluck averred that Mercedes had been arrested and had admitted to the police that she had hit Mainor for being rough with Estela, but had denied hitting him more than once.

Kluck further averred that a similar incident had occurred on November 11, 2000, also resulting in "markings" on Mainor's face, which a police investigation determined were the result of his mother's striking him. Kluck averred that although Mercedes was not arrested in November 2000, the police "did discuss the proper ways of discipline" with her. Finally, Kluck averred that a second child, Estela, also lived with Mercedes and that both children had been removed "at the time or prior to" Mercedes' arrest. On March 23, 2001, an ex parte order signed by the clerk magistrate found that continuation of the children in the home would be contrary to their welfare, that reasonable efforts were made to prevent their removal, and that it was in the best interests of the children to be placed in the temporary custody of the Department of Health and Human Services (DHHS). The children were placed in foster care on March 22.

The record indicates that after Mercedes was arrested and incarcerated for "child abuse," the then Immigration and Naturalization Service (INS) placed a hold on her through the Hall County jail because she was an illegal alien. In her brief, Mercedes states that because she had failed to appear at an asylum hearing several years earlier, a default order for her removal had been entered. Mercedes asserts she was aware of neither her status nor the deportation order because she had been granted temporary protected legal status and had continued to receive work permits each year. Mercedes was ultimately deported to Guatemala on May 15. The record further indicates that although

the children had asked to see Mercedes during the period of time in which she was held in the Hall County jail, Mercedes had no visitation with them.

On March 27, 2001, the court issued a juvenile summons ordering personal service on Mercedes in the Hall County jail, which service was perfected on March 28. The summons commanded Mercedes to appear in court for a hearing on April 9 regarding the allegations set forth in the juvenile petition. Both the summons and petition were written in English.

The adjudication hearing was conducted on April 9, 2001. Mercedes was not present. The bill of exceptions pertaining to the adjudication hearing contains an "introductory recitation" by the court transcriber, stating that Todd Elsbernd appeared as counsel for Mercedes.

The only evidence offered at the adjudication hearing was Kluck's affidavit, which had been filed with the court on March 23, 2001, in support of the ex parte order of the clerk magistrate removing the children from their home and placing them in the temporary custody of DHHS. Near the conclusion of the adjudication hearing, the court stated:

> Count one [homeless or destitute] is proven by the fact that the mother simply fails to appear and apparently no one's really too sure of her whereabouts at the current moment. And counts two [lacking proper parental care] and three [being placed in a situation dangerous to life and limb] are proven by the affidavit.

At this juncture in the adjudication hearing, the record indicates that an unidentified person in the courtroom, in referring to Mercedes, informed the court, "She's being held in jail. That's why she — she isn't here . . . ." Despite the juvenile summons signed by the judge presiding at the adjudication hearing, which summons directed that Mercedes be personally served in the Hall County jail, and the return showing that Mercedes was personally served as directed, the court responded that "she's in custody somewhere and unable to provide a home for the children." The court then stated that

> reunification of the juveniles in their home would be contrary to their health, safety or welfare. Reasonable efforts were not required to be made to preserve and reunify the

family because the juveniles were submitted to aggravated circumstances, an assault, and the parent committed a pr[o]scribed criminal act, being an assault.

Temporary custody with DHHS was continued, and a disposition hearing was subsequently scheduled for June 20, 2001. The court's written adjudication order repeated the finding that "[r]easonable efforts [are] not required to preserve and reunify the family because . . . the parent has subjected [the] juvenile(s) to aggravated circumstances, to wit: assault" and that the "parent has committed [a] proscribed criminal act, to wit: assault."

There is no evidentiary record of the June 20, 2001, disposition hearing other than a preprinted disposition/permanency hearing "checklist" signed by the presiding judge. The form contains a notation showing that Elsbernd appeared as counsel for Mercedes, as well as checkmarks noting that the disposition hearing was conducted and completed on June 20, 2001.

Notwithstanding the court's April 9, 2001, written order stating that reasonable efforts to preserve and reunify the family were not required due to aggravating circumstances, the court's June 20 written order contains checkmarks which indicate that the permanency objective of reunification set forth in DHHS' case plan and progress report was in the children's best interests. The order directs the case plan to be implemented, despite the case manager's statement in the court report, apparently submitted with the case plan, that "[r]easonable efforts are not necessary because on 04-09-2001 the court found reasonable efforts were not required."

Although the case plan's stated permanency objective was reunification, DHHS' only stated goal was to locate appropriate long-term placement for the children by December 14, 2001, noting in the court report that Mercedes' brother in Alabama had requested that the children be placed with him. The only stated tasks were to conduct a home study on relatives interested in obtaining long-term placement and to find a "fos-adopt" home for the children if placement with relatives was inappropriate. There were no goals or tasks related to reunification, including attempts to establish contact with Mercedes. The absence of any hearing conducted on the record leaves this court to speculate as to the apparent inconsistency between the order of April 9,

2001, finding that reunification would be contrary to the children's welfare, and the June 20 order apparently adopting a permanency objective of reunification.

The State Foster Care Review Board (FCRB) reviewed the case documents and submitted a recommendation to the court on September 18, 2001. See Neb. Rev. Stat. § 43-1308 (Reissue 1998) (requiring FCRB to review foster care cases every 6 months and submit its findings and recommendations to court with jurisdiction). FCRB found that the children were inappropriately removed from the home and that reasonable efforts were not made to prevent their removal, such as providing parenting classes, a family support worker, or therapy. FCRB concluded that a "slap on the face" was insufficient evidence to support a finding that Mainor was in imminent danger and that no evidence supported a finding that Estela was at risk.

FCRB further concluded that these mistakes led to a "domino effect," in which Mercedes had been deported and could not now reenter the United States without fear of a lengthy jail sentence. FCRB recommended that placement with Mercedes' brother in Alabama be explored immediately and that DHHS contact the INS to request a waiver or special visa for Mercedes to reenter the United States, based on the needs of her children. FCRB also recognized the deficiency in the case plan, concluding that the case plan was incomplete, as it failed to outline proposals for achieving reunification. The report further noted that "[t]he children have no contact with their mother, yet their mother is writing to people in the States providing her address in Guatemala, and asking how her children are doing." Finally, the report stated that a review hearing was scheduled for December 20, 2001.

There is no evidentiary record of the December 2001 review hearing. See Neb. Rev. Stat. § 43-1313 (Reissue 1998) (requiring review hearing of dispositional order to be conducted on record at least once every 6 months). The record does contain a preprinted review disposition/permanency hearing form, which references December 20, 2001. However, that same form also references January 31, 2002, and contains a file-stamped date of March 11, 2002.

The record also contains a case plan dated December 17, 2001, and bearing a December 19, 2001, file stamp of the Hall

County Court, as well as an exhibit sticker identifying it as "Exhibit # 3," upon which is written "12-20-01." This plan continues to call for reunification, but includes adoption as the alternative plan. The only stated goal again was finding long-term placement for the children. Given the existence of exhibit 3, the review disposition/permanency hearing form, and the reference to a December hearing in the FCRB report, this court can only conclude that despite the statutory directive that review hearings "shall be conducted on the record," no record of the hearing was made. See § 43-1313. As a result, this court is again left to speculate as to what evidence, if any, was offered and received at the December review hearing and the basis for the court's findings with respect to that proceeding.

In March 2002, the court conducted a review hearing on the record. Again, this court is not entirely certain of the date in March, given that the preprinted review disposition/permanency hearing form includes a file-stamp date of March 11, 2002, yet the "introductory recitation" of the proceedings by the court transcriber indicates it occurred on March 8. In any event, at this hearing, an affidavit was offered by Elsbernd and received into evidence without objection. In that affidavit, an "immigration attorney" located in Omaha, Nebraska, averred that she had been retained by Mercedes to help her find a way to participate in the proceedings. Elsbernd also advised the court that another agency was attempting to help Mercedes return to the United States and that Mercedes was not simply ignoring the proceedings.

Recognizing that 15 months in out-of-home placement was fast approaching, Elsbernd stated to the court that he was offering the affidavit "so at least we'd have the argument that we don't need to abide by the 15 months. That there is a — a reason. We've got a mother here who wants to fight for her children but because of the laws the way they are [she] cannot." See, Neb. Rev. Stat. § 43-292.02(3)(c) (Reissue 1998) (excusing State's requirement to file termination petition for enumerated exceptions, one of which is parents' lack of opportunity to avail themselves of services deemed necessary if reasonable efforts are required); Neb. Rev. Stat. § 43-292.03(1) (Reissue 1998) (requiring juvenile court to conduct exceptions hearing on record within 30 days of child's

reaching 15 months in out-of-home placement). Finally, Elsbernd further advised the court that he had not spoken·with Mercedes.

The court then stated that reunification with Mercedes would be contrary to the children's health, safety, and welfare and that reasonable efforts were not made to reunite the family because reasonable efforts were not possible. Although the guardian ad litem indicated there were problems with placing the children with Mercedes' brother in Alabama, the court made no findings of fact regarding that potential placement. The court thereafter stated that it was advising Mercedes, "through her attorney," that failure to accomplish reunification within 15 months of the preceding 22 months could be a ground for termination of her parental rights and that the State was required to request termination of those rights unless the court found a compelling reason to excuse the requirement.

Once again, despite the court's April 9, 2001, oral statement and written order that reasonable efforts to reunify were not required, as well as the statement at the March 2002 review hearing that reasonable efforts were not possible, the court's written order ultimately determined that reunification, with a concurrent plan of adoption, was the most appropriate permanency objective, and it approved a new case plan to that effect. The case plan, however, continued to omit rehabilitative goals or tasks related to reunification or to contacting Mercedes, but stated that such goals would be added if Mercedes were able to return to the United States.

The record next contains a court order dated June 3, 2002, adopting a case plan dated May 29, 2002. The order recites that a review hearing was held on June 3, but again, there is no transcription of the hearing in the bill of exceptions. In its written order, the court again found that reunification remained the primary permanency objective, with a concurrent goal of adoption. The target date in the case plan for this goal was June 22. Again, no rehabilitative goals were included in the case plan, based on DHHS' reasoning that Mercedes had been unable to return to the United States. Notwithstanding the court order that reunification remained the primary permanency objective, the court report, presumably offered at the June 3 review hearing, reiterates that DHHS' position is that reasonable efforts toward reunification

were not required under the court's adjudication order of April 9, 2001. Again, the absence of any evidentiary record makes it difficult for this court to understand exactly what occurred at the June 3 hearing and to subsequently conduct a de novo review of the proceeding.

On May 30, 2002, the State filed a motion to terminate Mercedes' parental rights to her children, alleging as its sole basis for termination of those rights that the children had been in out-of-home placement for 15 or more months of the most recent 22 months.

A termination hearing on the record was conducted on June 27, 2002. Immediately prior to the time the hearing commenced, Elsbernd requested permission to withdraw as counsel for Mercedes, stating as his basis the absence of any contact with Mercedes since his appointment as her attorney. In sustaining Elsbernd's motion, the court stated that because Elsbernd did not know how his client wished to proceed, there was not "any purpose in requiring you to try to slap together some sort of defense or explanation." Elsbernd was allowed to withdraw, and the hearing proceeded without Mercedes' presence or representation.

The county attorney offered into evidence the notice of the termination hearing which had been published in the Grand Island newspaper and resubmitted the earlier case plans and court reports. Kluck's prior affidavit was also resubmitted. The case manager testified that the children had been in continuous custody since March 2001 and had never gone back to Mercedes' home. She testified that Mercedes had not contacted her children since their removal, had not provided financial support for them, and had not completed any "parts of" the case plan. The case manager stated that termination was in the children's best interests because, inter alia, Mercedes had not made an effort to contact DHHS to check on her children or to send them gifts.

The court, recognizing that the 15-month requirement under § 43-292 was "[b]arely" satisfied as of the day of the hearing, appeared to express concern that this was the only allegation upon which the State sought termination of Mercedes' parental rights. The court then suggested that the evidence supported an additional finding of abandonment. The court, noting that the published notice contained "no notice of what the motion to terminate

specifically says," stated that it would include in its termination order a finding that the children had been abandoned. Presumably, the court reasoned that so long as Mercedes had no notice of any specific basis for termination of her parental rights, she would not be prejudiced by an additional finding not originally alleged by the State. The court then entered a handwritten order dated June 27, 2002, terminating Mercedes' parental rights to her children.

New counsel for Mercedes filed an appeal from the June 27, 2002, order. The appeal, however, was dismissed by the Nebraska Court of Appeals on August 28 because the June 27 order was illegible "to the point that the Court concludes that it is not a final judgment from which an appeal may be taken, but is only a finding which forms the basis for which judgment may be subsequently rendered." *In re Interest of Mainer T. & Estella T.*, 11 Neb. App. lviii (No. A-02-886, Aug. 28, 2002).

On September 17, 2002, the court entered a typewritten order based on its June 27 findings.. The court's order found that Mercedes had failed to appear, that the State had proved by clear and convincing evidence that the children had been in out-of-home placement for the requisite period pursuant to § 43-292(7), and that the children had been abandoned pursuant to § 43-292(1). The order further found that it was in the best interests of the children to terminate Mercedes' parental rights and the parental rights of any person claiming paternity. Mercedes timely appealed from the September 17 order terminating her parental rights.

### III. ASSIGNMENTS OF ERROR

Mercedes assigns, restated and reordered, that the juvenile court erred in (1) finding that reasonable efforts to prevent removal or to preserve and reunify the family were not required, (2) failing to make findings of fact that Mercedes should not have contact with her children, (3) dismissing Mercedes' appointed counsel at the termination hearing, (4) failing to continue the termination hearing until new counsel was appointed, (5) holding the termination hearing without Mercedes' presence or representation, (6) relying on hearsay evidence to support termination findings, (7) failing to give Mercedes timely and adequate notice that an allegation of abandonment would be a basis for termination, (8) failing to make findings of fact that the State had proved abandonment by clear

and convincing evidence, (9) failing to make findings of fact that the State had proved by clear and convincing evidence that it was in the children's best interests to have Mercedes' parental rights terminated, and (10) allowing Mercedes' appointed counsel to deliver ineffective assistance of counsel.

## IV. STANDARD OF REVIEW

In an appeal from an order terminating parental rights, an appellate court tries factual questions de novo on the record. Appellate review is independent of the juvenile court's findings. However, when the evidence is in conflict, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003). In reviewing questions of law arising under the Nebraska Juvenile Code, an appellate court reaches conclusions independent of the lower court's ruling. *Id.*

Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *In re Interest of D.W.*, 249 Neb. 133, 542 N.W.2d 407 (1996). Plain error may be asserted for the first time on appeal or be noted by an appellate court on its own motion. *Law Offices of Ronald J. Palagi v. Dolan*, 251 Neb. 457, 558 N.W.2d 303 (1997).

## V. ANALYSIS

The right of parents to maintain custody of their child is a natural right, subject only to the paramount interest which the public has in the protection of the rights of the child. *In re Interest of Kelley D. & Heather D.*, 256 Neb. 465, 590 N.W.2d 392 (1999). The fundamental liberty interest of natural parents in the care, custody, and management of their child is afforded due process protection. *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992).

While the concept of due process defies precise definition, it embodies and requires fundamental fairness. *Id.* State intervention to terminate the parent-child relationship must be accomplished by procedures meeting the requisites of the Due Process Clause. *In re Interest of Ty M. & Devon M., supra.* See

*Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) ("Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"). This right is of such importance that a parent's failure to appeal from an adjudication order, dispositional order, or other final, appealable order leading to the termination of parental rights will not preclude this court from reviewing the entire proceeding for a denial of due process in an appeal from a termination order. See, *In re Interest of Ty M. & Devon M., supra* (reviewing adjudication to determine whether parents were denied due process in appeal from order terminating parental rights while recognizing that parent may not question existence of facts upon which juvenile court asserts jurisdiction absent direct appeal from adjudication); *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992) (vacating adjudication order in appeal from termination of parental rights based, in part, upon finding of plain error in juvenile court's failure to recite factual basis for assuming jurisdiction and allowing mother's counsel to waive recitation, concluding that such actions denied mother fair adjudication hearing and procedural due process); *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987) (reversing termination order when record was devoid of evidence supporting rehabilitation plan entered at disposition hearing); *In re Interest of Amanda H.*, 4 Neb. App. 293, 304, 542 N.W.2d 79, 87 (1996) (recognizing that "a parent who is deprived of due process is entitled to litigate his rights anew without prejudice from the adjudication proceedings from which he was excluded"). Compare *In re Interest of N.M. and J.M.*, 240 Neb. 690, 484 N.W.2d 77 (1992) (vacating termination order based, in part, upon denial of due process in three review hearings when father was unrepresented by counsel), with *In re Guardianship of Rebecca B. et al.*, 260 Neb. 922, 621 N.W.2d 289 (2000) (recognizing that order entered at review hearing which does not merely extend terms of prior disposition and affects substantial right is final, appealable order).

The importance of this court's reserving the right to review the entire proceeding leading to termination for due process deprivations is illustrated by this case where our de novo review of the

record shows that (1) despite the court's acknowledgment at the adjudication hearing that Mercedes was in custody, and the record indicating that such custody was in the Hall County jail next door to where the hearing was being conducted, the court proceeded with the hearing without Mercedes' presence and did not otherwise afford Mercedes due process; (2) there is nothing in the record to support a finding that Mercedes' failure to appear at the adjudication hearing was intentional or the result of indifference; (3) Mercedes was not informed of her rights as required by Neb. Rev. Stat. § 43-279.01 (Reissue 1998), which includes, inter alia, the right to appeal; (4) Mercedes never waived her rights set forth in § 43-279.01; (5) Mercedes was not represented at the adjudication and it was not until May 7, 2001, 28 days after the adjudication, that counsel was appointed for Mercedes (as will be discussed in greater detail below); (6) appointed counsel had no contact with Mercedes from the date counsel was appointed to the date of Mercedes' deportation; and (7) appointed counsel had no contact with Mercedes from the date of Mercedes' deportation until appointed counsel was allowed to withdraw immediately prior to the termination hearing on June 27, 2002. Under these circumstances, to hold that Mercedes' failure to appeal from the adjudication, the disposition order, or review hearings precludes this court from reviewing those proceedings for deprivations of due process would be to abdicate this court's responsibility to ensure that proceedings which lead to the termination of a familial relationship are fundamentally fair. This we will not do.

Further, when plain error permeates the entire proceedings, this court may elect to conduct a de novo review of the entire record under both its review and supervisory powers. *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992). "Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error." *In re Interest of D.W.*, 249 Neb. 133, 134, 542 N.W.2d 407, 408 (1996). "Plain error is 'error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.' " *Id.* As we determine that plain error permeates the entire proceedings and that such error denied fundamental fairness to Mercedes, we will not

limit our de novo review to only the termination hearing or the assigned errors. Because we determine that deprivations of due process commenced at the initial stages of these proceedings, we will begin our review at that point.

### 1. FAILURE TO HOLD DETENTION HEARING

Mercedes' children were taken into custody on March 22, 2001, and on March 23, in accordance with Neb. Rev. Stat. § 43-250(4) (Reissue 1998), the court issued an ex parte order granting DHHS temporary custody of the children. The record, however, fails to show that the juvenile court conducted a detention hearing in this case. Neb. Rev. Stat. § 43-248(3) (Reissue 1998) allows the State to take a juvenile into custody without a warrant or order of the court when it appears the juvenile "is seriously endangered in his or her surroundings and immediate removal appears to be necessary for the juvenile's protection." However, the parent retains a liberty interest in the continuous custody of his or her child. An ex parte order subsequently authorizing temporary custody with DHHS is permitted because of its short duration and the requirement of further action by the State before custody can be continued. See *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991) (analyzing interests involved at removal stage and requirements of Due Process Clause), *disapproved on other grounds, O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998). But "the State may not, in exercising its parens patriae interest, unreasonably delay in notifying a parent that the State has taken emergency action regarding that parent's child nor unreasonably delay in providing the parent a meaningful hearing." *In re Interest of R.G.*, 238 Neb. at 419, 470 N.W.2d at 790.

A prompt detention hearing is required in order to protect the parent against the risk of an erroneous deprivation of his or her parental interests. See *id.* "[C]ontinued detention pending adjudication is not permitted under the Nebraska Juvenile Code unless the State can establish by a preponderance of the evidence at an adversarial hearing that such detention is necessary for the welfare of the juvenile." *In re Interest of Anthony G.*, 255 Neb. 442, 446, 586 N.W.2d 427, 429-30 (1998). Accord, *In re Interest of Borius H. et al.*, 251 Neb. 397, 558 N.W.2d 31 (1997); *In re*

*Interest of R.G., supra.* That evidence includes proof that reasonable efforts were made to preserve and reunify the family when required under Neb. Rev. Stat. § 43-283.01 (Reissue 1998). See Neb. Rev. Stat. § 43-254 (Reissue 1998). This hearing is a parent's opportunity to be heard on the need for the removal and the satisfaction of the State's obligations under § 43-283.01, and it is not optional when a child is detained for any significant period of time. Although the juvenile court's preprinted form order entitled "Adjudication Hearing" contained a checkmark beside a standard finding that "reasonable efforts were made to preserve and reunify the family as required under Sec. 43-283.01," there is no record of any evidentiary hearing to support such determination.

In *In re Interest of R.G., supra,* we concluded that the mother's due process rights were not violated by a 14-day delay between the entry of an ex parte order and a detention order when she was given an opportunity to be heard at the detention hearing and was allowed to visit her children in the interim. We cautioned, however, that "the 14 days elapsing between the entry of the ex parte order and the hearing poise the procedures employed in this case on the brink of unreasonableness." 238 Neb. at 423, 470 N.W.2d 792.

In this case, the record contains no indication that the State ever notified Mercedes of what emergency action had been taken regarding her children or how she could contact DHHS. Nor does the record contain any evidence that the State provided a meaningful opportunity for Mercedes to be heard on the issue of whether emergency removal was necessary. Furthermore, 18 days elapsed between the entry of the ex parte order and the adjudication hearing without the State ever showing that the requirements of § 43-254 were satisfied. These procedures denied Mercedes due process and are plain error.

## 2. ADJUDICATION HEARING

In the context of both adjudication and termination hearings, this court has stated that

> "[p]rocedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine

adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker."

*In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 158, 655 N.W.2d 672, 681 (2003), quoting *In re Interest of Kelley D. & Heather D.*, 256 Neb. 465, 590 N.W.2d 392 (1999) (analyzing due process claims regarding adjudication hearing). Under § 43-279.01(1)(b), this court has also held that "a parent in a juvenile court case has the right to appointed counsel if unable to hire a lawyer." *In re Interest of N.M. and J.M.*, 240 Neb. 690, 697, 484 N.W.2d 77, 82 (1992).

Mercedes was not present at the adjudication hearing. Our de novo review of the record indicates that at the time the adjudication proceeding was occurring, Mercedes was incarcerated in the Hall County jail next door to the courthouse where the proceeding was conducted.

In the context of a termination hearing, this court has held:
[P]arental physical presence is unnecessary for a hearing to terminate parental rights, *provided* that the parent has been afforded procedural due process for the hearing to terminate parental rights.

If a parent has been afforded procedural due process for a hearing to terminate parental rights, allowing a parent who is incarcerated or otherwise confined in custody of a government to attend the termination hearing is within the discretion of the trial court, whose decision on appeal will be upheld in the absence of an abuse of discretion. In deciding whether to allow a parent's attendance at a hearing to terminate parental rights, notwithstanding the parent's incarceration or other confinement, a court may consider the delay resulting from prospective parental attendance, the need for disposition of the proceeding within the immediate future, the elapsed time during which the proceeding has been pending before the juvenile court, the expense to the State if the State will be required to provide transportation for the parent, the inconvenience or detriment to parties or witnesses, the potential danger or security risk which may occur as a result of the parent's release from custody

or confinement to attend the hearing, the reasonable avail-ability of the parent's testimony through a means other than parental attendance at the hearing, and the best interests of the parent's child or children in reference to the parent's prospective physical attendance at the termination hearing. (Emphasis supplied.) *In re Interest L.V.*, 240 Neb. 404, 416, 482 N.W.2d 250, 258-59 (1992). For the reason discussed below, we now extend the holding in *In re Interest of L.V.* to a parent who cannot appear at an adjudication hearing because of the parent's incarceration or confinement. See *In re Stephen Tyler R.*, 213 W. Va. 725, 584 S.E.2d 581 (2003) (extending rule adopted from *In re Interest of L.V.* to case involving adjudication of incarcerated parent's child). See, also, *State ex rel. Jeanette H. v. Pancake*, 207 W. Va. 154, 529 S.E.2d 865 (2000) (adopting Nebraska's factors for determining whether to allow incarcerated parent to attend ter-mination hearing).

An adjudication hearing is the trial stage of a juvenile proceed-ing, in which the State must prove its allegations in the petition by a preponderance of the evidence. Neb. Rev. Stat. § 43-279(1) (Reissue 1998). "[C]ases brought under § 43-247(3)(a) can, and sometimes do, end in drastic measures such as termination of parental rights." *In re Interest of Billie B.*, 8 Neb. App. 791, 796, 601 N.W.2d 799, 803 (1999). Under § 43-279.01(1)(a), "adequate notice of the possibility of the termination of parental rights must be given in adjudication hearings." *In re Interest of N.M. and J.M.*, 240 Neb. 690, 696, 484 N.W.2d 77, 81 (1992).

Based upon the facts adduced at an adjudication hearing, the State may file a motion for termination of parental rights. See *In re Interest of Hollenbeck*, 212 Neb. 253, 322 N.W.2d 635 (1982). Similarly, the court may implement a rehabilitation plan as a con-dition of reunification, deny a parent the opportunity for rehabil-itation, or place the children with a permanent guardian based upon the facts adduced at this hearing. See, e.g., Neb. Rev. Stat. § 43-1312(2) (Reissue 1998) (requiring DHHS to adopt case plan calling for adoption, guardianship, et cetera, when return of child to parents is unlikely based on investigation); *In re Interest of Tabatha R.*, 255 Neb. 818, 587 N.W.2d 109 (1998) (court did not abuse its discretion in determining that it was not in child's best interests to order rehabilitation plan); *In re Interest of J.S.*,

*A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987) (requiring juvenile courts to inform parents that they may order rehabilitation plan).

Thus, adjudication is a crucial step in proceedings possibly leading to the termination of parental rights. Cf. *State v. Norwood,* 203 Neb. 201, 204, 277 N.W.2d 709, 711 (1979) (noting that hearing on motion to terminate was "a continuation of the same proceeding"). Furthermore, parents have a fundamental liberty interest at stake, and the State cannot adjudicate a child except by procedures which meet the requisites of the Due Process Clause. *In re Interest of Ty M. & Devon M.,* 265 Neb. 150, 655 N.W.2d 672 (2003). " 'For more than a century the central meaning of procedural due process has been clear: "Parties whose rights are to be affected are entitled to be heard . . . ." ' " *In re Interest of L.V.,* 240 Neb. 404, 413, 482 N.W.2d 250, 257 (1992), quoting *Fuentes v. Shevin,* 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972).

We do not intend by this holding to require juvenile courts "to conduct an inquiry as to the whereabouts of every respondent parent who fails to appear for a scheduled hearing in order to ascertain whether their absence is attributable to incarceration." *In re Stephen Tyler R.,* 213 W. Va. at 733, 584 S.E.2d at 589. In most situations, in order to trigger the requirements of *In re Interest of L.V.,* the burden is properly placed on the parent or the parent's attorney to notify the court of the parent's incarceration and to request attendance. See *In re Stephen Tyler R., supra.* In this case, however, the court acknowledged at the adjudication that Mercedes was "in custody somewhere," and our de novo review of the record indicates that "somewhere" was in the Hall County jail. Under these circumstances, it is superfluous to require Mercedes to notify the court of her incarceration when the court was already aware that she was in custody and the record indicated that such incarceration was in the Hall County jail. See, *Purbaugh v. Jurgensmeier,* 240 Neb. 679, 483 N.W.2d 757 (1992) (noting general rule that notice of personal representative's status in contract transaction is unnecessary if facts demonstrate that third party was aware of status); *Melling v. Mattley,* 10 Neb. App. 745, 637 N.W.2d 661 (2002) (concluding that failure of Internal Revenue Service to comply with notice statutes did not void sale where property owners had actual

knowledge of seizure and sale and failed to raise lack of notice as defense); *Snowden Farms v. Jones*, 8 Neb. App. 445, 595 N.W.2d 270 (1999) (purchaser was not obligated to notify seller of title defects in sale of real property when sellers learned of defects on their own). Cf. *State v. Hudson and Maeberry*, 208 Neb. 649, 654, 305 N.W.2d 359, 362 (1981) (trial court need not initiate inquiry into defense counsel's possible conflict of interest when defendant fails to raise objection " '[u]nless the trial court knows or reasonably should know that a particular conflict exists' "). In addition, expecting Mercedes to have contacted the court to request attendance when the notice of the hearing was provided by a summons in a language she could not read, and when, as discussed below, she was not represented by counsel at the adjudication hearing, would not comport with fundamental fairness. We therefore turn to a determination of whether the juvenile court afforded Mercedes due process and, if so, whether the court abused its discretion in not having Mercedes present during the adjudication proceeding.

Although the court transcriber's "introductory recitation" of the adjudication hearing states that "Todd Elsbernd appear[s] as counsel for the natural mother," Elsbernd is not noted as being present when the court stated the appearances for the record prior to commencing the adjudication hearing. No reference is made to Elsbernd during the adjudication hearing, and likewise, no participation is attributable to Elsbernd. Furthermore, neither the court's "First Appearance" checklist, nor the "Adjudication Hearing" checklist, both dated April 9, 2001, contain a checkmark affirmatively noting the presence of counsel for Mercedes, or that counsel had been waived. See *State v. Orduna*, 250 Neb. 602, 610, 550 N.W.2d 356, 362 (1996) ("checklist or other such docket entry which is made by one authorized to make it imports verity, and unless contradicted, it stands as a true record of the event"). To the contrary, the "First Appearance" checklist has written upon it, "5-7-01 Elsbernd appt," and there is a separate order signed by the clerk magistrate showing Elsbernd's appointment to have occurred on May 7, 2001, 28 days after the adjudication hearing.

We determine from our de novo review of the record that despite Mercedes' statutory right to counsel, she was neither

represented by counsel at the adjudication hearing nor had she waived this right. See, § 43-279.01; *In re Interest of N.M. and J.M.*, 240 Neb. 690, 484 N.W.2d 77 (1992). We further determine from our de novo review of the record that the juvenile court otherwise failed to afford Mercedes due process in that (1) no procedure was utilized by the court to provide Mercedes with any opportunity to refute or defend against the allegations of the petition and (2) no procedures were implemented to afford Mercedes an opportunity to participate in the hearing, to confront or cross-examine adverse witnesses, or to present evidence on her behalf. See *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992).

We determine that such lack of procedures denied Mercedes due process. Having so determined, we need not reach the issue of whether the juvenile court abused its discretion in not allowing Mercedes to be physically present.

### 3. DISPOSITION AND REVIEW HEARINGS

The proceeding at which evidence is adduced to determine if a rehabilitative plan is necessary is the disposition hearing. *In re Interest of J.H.*, 242 Neb. 906, 497 N.W.2d 346 (1993).

At a disposition hearing, a juvenile court must determine reasonable provisions material to the parental plan's rehabilitative objective of correcting, eliminating, or ameliorating the situation or condition on which the adjudication has been obtained. *Id.* But see *In re Interest of Tabatha R.*, 255 Neb. 818, 587 N.W.2d 109 (1998) (discussing exception to this requirement when court determines that reunification is not in child's best interests). "Once a plan of reunification has been ordered to correct the conditions underlying the adjudication under § 43-247(3)(a), the plan must be reasonably related to the objective of reuniting the parents with the children." See *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 163-64, 655 N.W.2d 672, 685 (2003). Furthermore, "[t]he record of proceedings before a juvenile court shall contain the evidence presented at the dispositional hearing held for the purpose of the parental rehabilitative plan." *In re Interest of J.H.*, 242 Neb. at 911, 497 N.W.2d at 352. See *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987) (pronouncing procedural rule requiring evidentiary hearing on record before court adopts rehabilitative plan, and

reversing judgment and remanding matter for juvenile court to determine whether custody would be returned to parent, whether supervision of parental custody was warranted, and whether rehabilitation plan was necessary).

Although the record includes a disposition order dated June 20, 2001, our de novo review leads us to conclude that no evidentiary hearing was held on the record prior to its entry. See *In re Interest of J.S., A.C., and C.S., supra.* "Fundamental fairness, at the very least, requires the adducing of appropriate evidence as a factual foundation for a rehabilitative plan which eventually may be used as a ground or condition for termination of parental rights." *In re Interest of J.H.*, 242 Neb. at 912, 497 N.W.2d at 352. In addition, the juvenile court's specific findings of fact supporting the provisions contained in the parental rehabilitative plan shall be stated in the record. *Id.* Although it appears that a rehabilitative plan was adopted on June 20, no findings of fact supporting its provisions are discernible from our de novo review of this record. We once again reiterate that juvenile courts are courts of record and that a verbatim record of all proceedings is required. *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992) (concluding that juvenile court's failure to find facts supporting rehabilitative plan it ordered was plain error).

The absence of any evidentiary record of the disposition proceeding leaves this court unable to reconcile what appear to be inconsistent findings. Contrary to the court's adjudication order of April 9, 2001, that reasonable efforts to preserve and unify the family were not required, the case plan approved by the court in its written disposition order dated June 20, 2001, included reunification as its only permanency objective. However, the only stated goal in the case plan was to find long-term placement for the children. Although the June 20 disposition order includes a checkmark indicating that the provisions of the case plan were "reasonably material to the rehabilitative objective of correcting, eliminating, or ameliorating the situation or condition on which the adjudication has been obtained," the case plan does not include any rehabilitative goals or tasks directed toward that objective.

The only exhibit in the record that "appears" to have been submitted to the court at the disposition proceeding is the case

manager's court report which accompanied the case plan. That report stated that *reasonable efforts were not required because of the court's adjudication order* and that adoption would be pursued if placement of the children with Mercedes' brother in Alabama were inappropriate due to Mercedes' deportation.

We are left to speculate as to why the court's adjudication order found that reasonable efforts were not required, yet the disposition order adopts a permanency objective of reunification. No evidentiary record or factual findings exist to help explain these orders or support an order calling for reunification without an accompanying rehabilitation plan with goals or tasks to achieve that objective. Unless the provisions in a case plan "tend to correct, eliminate, or ameliorate the situation or condition on which the adjudication has been obtained," a court-ordered plan "is nothing more than a plan for the sake of a plan, devoid of corrective and remedial measures." *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 268, 417 N.W.2d 147, 158 (1987).

These apparent inconsistencies continue throughout every review hearing in this case. Each case plan called for reunification without requiring DHHS to make any effort toward that objective. Although the record indicates that at a March 2002 review hearing, the court stated that "[r]easonable efforts were not made to reunify the family" and that reunification "wasn't possible," the FCRB report suggests that DHHS knew the identity of people in possession of Mercedes' address. In any event, the court reports and case plans prepared by DHHS are devoid of any showing that DHHS attempted to contact Mercedes, determine what rehabilitative steps could be taken in spite of her deportation, or determine whether visitation of some sort was possible. Although the guardian ad litem stated at oral argument that the first goal was to find Mercedes, none of the case plans stated that contact with Mercedes was a goal, nor did the case manager discuss in the court reports any efforts to contact Mercedes.

The inadequacy of this record is not due to the failure of Mercedes to provide a record in support of claimed errors. See *In re Interest of R.R.*, 239 Neb. 250, 253, 475 N.W.2d 518, 520 (1991) ("[i]t is incumbent upon the party appealing to present a record which supports the errors assigned"). The praecipe for the bill of exceptions filed by Mercedes requests "all evidence,

including testimony and exhibits offered at the hearings conducted in this matter on or about March 23, 2001 through June 27th, 2002." Rather, this appeal presents us with an inadequate record due to the court's failure to conduct evidentiary hearings when such were required by due process and statute. See, § 43-1313; *In re Interest of J.H.*, 242 Neb. 906, 497 N.W.2d 346 (1993); *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991); *In re Interest of J.S., A.C., and C.S., supra.*

We conclude upon our de novo review of the record that the court's approval of a permanency objective of reunification without any means by which Mercedes could achieve that goal, without any requirement that DHHS make reasonable efforts to provide services toward that objective, and without conducting disposition and review hearings on the record, was fundamentally unfair, denied Mercedes due process in these proceedings, and is plain error. Cf. *In re Interest of J.S., A.C., and C.S., supra* (reversing termination of parental rights based on failure to comply with provisions of rehabilitative plan that were not material to plan's objective of correcting conditions that led to adjudication); *In re Interest of L.J., J.J., and J.N.J.*, 220 Neb. 102, 368 N.W.2d 474 (1985) (concluding that case plan was not reasonable when mother was financially and physically unable to comply).

## 4. TERMINATION HEARING

### (a) Abandonment

Abandonment requires a finding that a parent intentionally withheld from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and the opportunity for the display of parental affection for the child. The question of abandonment is largely one of intent, to be determined in each case from all the facts and circumstances. *In re Interest of Sunshine A. et al.*, 258 Neb. 148, 602 N.W.2d 452 (1999).

The record contains no specific findings of fact upon which the juvenile court determined that Mercedes abandoned her children. Our de novo review of the record discloses only two circumstances upon which the court could have based its abandonment determination: Mercedes' deportation and the absence of contact between Mercedes and her children subsequent to the deportation.

There is nothing in the record to show that Mercedes left the United States voluntarily and, by so doing, intentionally withheld from her children her presence, care, love, protection, or maintenance. Cf. *Guardianship of and Custody of Charlene D.*, 121 Misc. 2d 168, 467 N.Y.S.2d 336 (1983). To the contrary, there is evidence in the record in the form of an affidavit from an "immigration attorney" averring that Mercedes had retained the attorney to "investigate [Mercedes'] immigration options" and that Mercedes' priority in retaining such attorney "was to find a way to participate in the family law process regarding custody of her children." In offering the affidavit into evidence, Elsbernd advised the court that he was offering the affidavit to "show [Mercedes] is interested, that she wants to be here[;] however she cannot be here."

Although the record shows that Mercedes has had no contact with the children since her arrest and incarceration on March 22, 2001, such is not dispositive. While the case manager testified that Mercedes had not contacted the agency or her children, DHHS never made a showing that Mercedes had been given any information as to how contact with her children could be accomplished. Furthermore, the record contains information that despite Mercedes' living a substantial distance from a telephone, she had called a crisis center in Grand Island and another relative in Alabama, inquiring about her children.

In our de novo review of the record, we determine that the evidence does not clearly and convincingly support the juvenile court's finding that Mercedes abandoned her children, and such finding is reversed.

### (b) Best Interests

Prior to terminating parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003). Although the record supports the court's finding that the children were in continuous, out-of-home placement for 15 months and 5 days on the day of the termination hearing, it does not support a finding that termination on this ground was in the children's best interests.

The foremost purpose and objective of the Nebraska Juvenile Code is the protection of a juvenile's best interests, with preservation of the juvenile's familial relationship with his or her parents where the continuation of such parental relationship is proper under the law. *In re Interest of Rebecka P.*, 266 Neb. 869, 669 N.W.2d 658 (2003). Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the children require termination of the parental rights. *In re Interest of Ty M. & Devon M., supra.*

The 15-month condition set forth in § 43-292(7) serves the purpose of providing a reasonable timetable for parents to rehabilitate themselves. See *In re Interest of Ty M. & Devon M., supra.* But termination based on the ground that a child has been in out-of-home placement for 15 of the preceding 22 months is not in a child's best interests when the record demonstrates that a parent is making efforts toward reunification and has not been given a sufficient opportunity for compliance with a reunification plan. *In re Interest of Rebecka P., supra.* See, also, §§ 43-292.02(3)(c) and 43-292.03(1).

In *In re Interest of L.J., J.J., and J.N.J.*, 220 Neb. 102, 368 N.W.2d 474 (1985), this court reversed the termination of a mother's parental rights, in part, because the case plan called for her to make support payments that she could not afford and to make long-distance visitations to see her children in separate places on the same day. Because the mother was poor and could not physically comply with the visitations, this court considered the plan to be "designed for failure" and patently unreasonable. *Id.* at 112, 368 N.W.2d at 481.

Similarly, the State has not shown that termination of Mercedes' parental rights is in the children's best interests when the case plan that was adopted by the court provided Mercedes with no means of achieving the permanency objective of reunification. Nor has the State shown by clear and convincing evidence that Mercedes has failed to make any efforts toward reunification. The uncontroverted evidence presented at the March 2002 review hearing showed that Mercedes was working with an "immigration attorney" to return to the United States in order to participate in the proceedings. The State cannot prove that termination of parental rights is in a child's best interests by implementing a case

plan that precludes a parent's compliance. *In re Interest of L.J., J.J., and J.N.J., supra.* Based upon our de novo review of the record, we determine that the State has failed to prove by clear and convincing evidence that termination of Mercedes' parental rights based upon § 43-292(7) is in the children's best interests.

Having determined that the juvenile court denied Mercedes due process in the proceedings and that its bases for termination of her parental rights were not supported by the record, we find it unnecessary to reach Mercedes' remaining assignments of error.

## VI. CONCLUSION

Our de novo review of the record demonstrates that during these proceedings, Mercedes was denied due process.

Upon our de novo review, we further determine that the court's findings that Mercedes had abandoned her children and that it was in the best interests of her children to terminate Mercedes' parental rights were error.

We therefore vacate the juvenile court's adjudication order and disposition order, as well as its order terminating Mercedes' parental rights, and remand the matter to the juvenile court with directions to conduct a detention hearing and a new adjudication hearing and to provide Mercedes due process in the proceedings consistent with this opinion.

VACATED AND REMANDED WITH DIRECTIONS.