## CONCLUSION

We conclude that the Co-op has not appealed from a final order because the trial court has determined only that Jacobitz' accident occurred in the scope of his employment, but has not yet determined benefits. We therefore dismiss the appeal and remand the cause for further proceedings.

APPEAL DISMISSED, AND CAUSE REMANDED
FOR FURTHER PROCEEDINGS.

McCORMACK, J., participating on briefs.

---

In re Interest of Landon H., a child
under 18 years of age.
State of Nebraska, appellee, v.
Bonnie H., appellant.

___ N.W.2d ___

Filed December 27, 2013.    No. S-13-140.

1. **Constitutional Law: Due Process: Appeal and Error.** Whether the procedures given an individual comport with constitutional requirements for procedural due process presents a question of law, which an appellate court independently reviews.

2. **Constitutional Law: Parental Rights: Due Process.** Because of a natural parent's fundamental liberty interest in the care, custody, and management of their child, if the State intervenes to adjudicate a child or terminate the parent-child relationship, its procedures must meet the requisites of the Due Process Clause.

3. **Juvenile Courts: Parental Rights: Due Process.** A juvenile court order that terminates parental rights through procedures that violate the parent's due process rights is void.

4. **Constitutional Law: Due Process.** Procedural due process requires notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker.

5. **Juvenile Courts: Parental Rights: Right to Counsel.** In juvenile proceedings, Neb. Rev. Stat. § 43-279.01(1)(b) (Reissue 2008) gives a parent the right to appointed counsel if the parent cannot afford an attorney.

6. **Juvenile Courts: Parental Rights: Due Process.** When a juvenile court knows that a parent is incarcerated or confined nearby, it should take steps, without request, to afford the parent due process before adjudicating a child or terminating the parent's parental rights.

7. **Juvenile Courts: Parental Rights: Attorney and Client: Notice.** A juvenile court may not assume that a parent has avoided communications with his or her attorney unless the attorney shows that he or she has made diligent efforts to serve notice to the parent of the attorney's intent to withdraw from the representation.

8. **Juvenile Courts: Parental Rights: Right to Counsel: Due Process.** Absent circumstances showing that a parent has avoided contact with his or her attorney, a juvenile court must respect the parent's due process right to representation by an attorney.

Appeal from the Separate Juvenile Court of Lancaster County: TONI G. THORSON, Judge. Vacated and remanded with direction.

David P. Thompson, of Thompson Law, P.C., L.L.O., for appellant.

Joe Kelly, Lancaster County Attorney, and Daniel Zieg for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

CONNOLLY, J.

## SUMMARY

The juvenile court allowed the attorney for the appellant, Bonnie H., to withdraw at the start of a default hearing to terminate Bonnie's parental rights without requiring the attorney to show that he gave notice to Bonnie of his intent to withdraw. We conclude that the court's ruling denied Bonnie due process and constituted plain error. We vacate the court's order and remand the cause with direction.

## BACKGROUND

In October 2011, Bonnie was ingesting narcotics in a parked vehicle with a male companion. Landon H., who was then age 2, was asleep in the back seat. Police officers arrested Bonnie and took Landon into emergency custody. Landon's father, Shawn H., was incarcerated at the time. Landon was later placed with foster parents. He has reactive attachment disorder and behavioral problems. Bonnie has a history of substance

abuse and had previously relinquished her parental rights for her two other children.

The court appointed counsel for Bonnie in November 2011. At the first adjudication hearing in December, Bonnie's counsel appeared without her to deny the allegations. The court continued the hearing. In January 2012, Bonnie appeared and pleaded no contest to the State's allegation that she had cocaine on her person when the police searched her. The court adjudicated Landon under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) because of parental neglect. The juvenile court's rehabilitation plan required Bonnie to cooperate with drug treatment and testing, obtain a legal means of income, maintain regular contact with the representative for the Department of Health and Human Resources (Department), and provide contact information.

In February 2012, counsel appeared with Bonnie for a disposition hearing. The court found that she was unemployed and homeless, had not cooperated with offered services, and had not consistently provided the Department with her contact information. The court found that she had made poor progress toward the goal of reunification. The alternative plan was adoption.

At the April 2012 child support and review hearing, counsel appeared without Bonnie. The court continued the hearing until June. At the June hearing, counsel appeared again without Bonnie. In addition to its previous requirements, the court ordered Bonnie to obtain psychiatric treatment. The court continued the child support hearing and scheduled another review hearing for September. The court also scheduled a permanency plan hearing for January 2013.

At the September 2012 child support and review hearing, counsel appeared without Bonnie. Bonnie was still making poor progress toward the goal of reunification. The court scheduled the next review hearing to coincide with the January permanency plan hearing. But before the court issued the order, the State had already moved to terminate Bonnie's parental rights. The court scheduled the termination hearing for October 24. It ordered the clerk to issue summons and notice to both parents.

On October 24, 2012, counsel appeared without Bonnie. The court continued the hearing to December 5 to allow for service on Shawn by publication. In November, the court issued an order that rescinded a previous order for service on Bonnie by publication. The court stated that Bonnie had been personally served, but the record does not show where or when she was served.

On December 5, 2012, counsel appeared without Bonnie. The court continued the termination hearing, for good cause shown. It set a default hearing to terminate parental rights for January 4, 2013, the day previously scheduled for the permanency plan hearing. The order commanded Bonnie and Shawn to appear and stated, "You or your attorney may present evidence on your behalf . . . ." The order warned the parents that it would be deciding whether to terminate their parental rights. A note at the bottom of the order specifically stated that the court sent a copy to Bonnie at the Lancaster County jail in Lincoln, Nebraska.

At the January 4, 2013, termination hearing, counsel again appeared without Bonnie. Before the hearing started, Bonnie's attorney asked the court for leave to withdraw. He said that he had had no recent contact with Bonnie and that his last contact was in February 2012. He also said that he had scheduled several meetings at his office but that she had failed to appear and had not responded to his telephone calls and letters. Because Bonnie had not communicated with him, the court allowed him to withdraw. But the court stated that it would consider Bonnie's request for counsel if she contacted the court.

The caseworker testified that Bonnie had not visited Landon since the previous summer and had moved to Grand Island, Nebraska, since then. The caseworker said that she last contacted Bonnie through an e-mail 4 to 5 months earlier but that Bonnie had not responded to her request for an address. She said that Bonnie had occasionally asked to see Landon, but without knowing her address, the caseworker could not provide visitation and drug testing services to Bonnie in Grand Island. She said that Bonnie had not provided any

support for Landon and that Landon's behavioral problems had worsened when in Bonnie's presence. The court agreed with the Department that the evidence supported termination of both Bonnie's and Shawn's parental rights. The court's order noted that a copy was sent to Bonnie at an address in Edgar, Nebraska.

Bonnie's attorney moved for payment of his fees for February, July, and November 2012. Contrary to his statement to the court that he last contacted Bonnie in February, his affidavits showed that he met Bonnie "in custody" on October 19 and again on October 24, the date of the first termination hearing. He also listed fees for several telephone calls to or from Bonnie after February, most recently on October 8.

A written order shows that the day after the court issued its termination order, it heard Bonnie's request for appointment of a different attorney to represent her. The court sustained Bonnie's request for an attorney and later issued an order allowing Bonnie to proceed in forma pauperis on appeal.

## ASSIGNMENTS OF ERROR

Bonnie argues that the court's order, which allowed her attorney to withdraw before the termination hearing began, denied her due process. But in her brief, Bonnie has not assigned the court's action as error. Absent plain error, an appellate court considers only an appellant's claimed errors that the appellant specifically assigns in a separate "assignment of error" section of the brief and correspondingly argues in the argument section.[1]

## STANDARD OF REVIEW

[1] Whether the procedures given an individual comport with constitutional requirements for procedural due process presents a question of law, which we independently review.[2]

---

[1] See, Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2012); *In re Interest of Samantha L. & Jamine L.*, 286 Neb. 778, ___ N.W.2d ___ (2013), citing *In re Interest of Jamyia M.*, 281 Neb. 964, 800 N.W.2d 259 (2011).

[2] See, e.g., *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012); *In re Interest of Davonest D. et al.*, 19 Neb. App. 543, 809 N.W.2d 819 (2012).

## ANALYSIS

Bonnie contends that she had a statutorily guaranteed right to counsel. She argues that the juvenile court violated her due process rights when it allowed her counsel to withdraw from representing her without notifying her. She argues that she was entitled to expect that her attorney would represent her by making proper arguments and cross-examining the State's witness.

The State disagrees. It contends that a parent waives the right to be present at a termination hearing if he or she voluntarily or negligently fails to appear after proper notice. It further contends that the court did not deny her due process because she had an opportunity to contact her attorney or appear at the hearing to represent herself or to ask the court for a new attorney. But the record does not affirmatively show that Bonnie elected to be unrepresented or that the court took any steps to afford her due process in a termination proceeding.

[2,3] Because of a natural parent's fundamental liberty interest in the care, custody, and management of their child,[3] if the State intervenes to adjudicate a child or terminate the parent-child relationship, its procedures must meet the requisites of the Due Process Clause.[4] A juvenile court order that terminates parental rights through procedures that violate the parent's due process rights is void.[5]

[4,5] Procedural due process requires notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing

---

[3] *Michael E. v. State*, 286 Neb. 532, ___ N.W.2d ___ (2013).

[4] *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004).

[5] See *id*.

before an impartial decisionmaker.[6] In juvenile proceedings, Neb. Rev. Stat. § 43-279.01(1)(b) (Reissue 2008) gives a parent the right to appointed counsel if the parent cannot afford an attorney.

The record shows that 5 days before the October 24, 2012, termination hearing, Bonnie's counsel met with her "in custody," and he met with her again on October 24. The court continued this hearing to provide time for the State to notify Shawn of the hearing by publication. But Bonnie's counsel did not claim at the October 24 hearing that he could not represent Bonnie because he had not communicated with her about the termination proceeding.

As noted, in the court's November 2012 order, it did not state how or where personal service was made. But the record shows that at the continued termination hearing on December 5, the court knew that Bonnie was in jail. In the court's order, which continued the termination hearing to January 2013 for good cause, the court stated that a copy of the order was mailed to Bonnie at the Lancaster County jail.

Although the court and counsel did not discuss Bonnie's confinement on the record, either the county attorney or Bonnie's attorney had obviously informed the court that Bonnie was in jail. Yet, the court did not ensure that she would be able to participate in the termination proceeding or verify that despite Bonnie's confinement, her attorney would be able to represent her. The court's failure to take these steps is inconsistent with the requirements that we have set out for these circumstances.

We have held that

parental physical presence is unnecessary for a hearing to terminate parental rights, *provided* that the parent has been afforded procedural due process for the hearing to terminate parental rights.

If a parent has been afforded procedural due process for a hearing to terminate parental rights, allowing a

---

[6] *Id*.; *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992), citing *Fuentes v. Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972).

parent who is incarcerated or otherwise confined in custody of a government to attend the termination hearing is within the discretion of the trial court . . . .[7]

In that case, the parent was incarcerated in another state. Although he did not personally appear, he received notice of the accusations against him, participated telephonically in the hearing, and was represented by counsel. So he was not denied due process.

In *In re Interest of Mainor T. & Estela T.*,[8] we considered a parent's due process rights who was jailed during the adjudication proceeding. There, the record showed that the court knew the parent was in the county jail next door to the courthouse. She was not represented by counsel and had not waived her right to counsel, and the court did not provide an opportunity for her to participate in the adjudication proceeding. The court's failure to ensure that she could participate personally or through an attorney violated her due process rights. We vacated the court's order.

[6] We clarified that juvenile courts are not required to conduct inquiries into the whereabouts of every parent who fails to appear for a scheduled hearing. In most cases, a parent who has notice of the hearing should request to personally participate.[9] But when a court knows that a parent is incarcerated or confined nearby, it should take steps, without request, to afford the parent due process before adjudicating a child or terminating the parent's parental rights.[10]

Here, instead of conducting the December 2012 termination hearing in a manner that afforded Bonnie due process, the court continued the hearing until January 2013. Despite knowing that Bonnie was in jail in the same city, the court made no inquiries whether she would be released for the January hearing, whether her attorney could represent her without her presence, or how to arrange for her participation even if she was

---

[7] *In re Interest of L.V., supra* note 6, 240 Neb. at 416, 482 N.W.2d at 258.

[8] See *In re Interest of Mainor T. & Estela T., supra* note 4.

[9] See *id.*

[10] See *id.*

not present. At the continued termination hearing in January, the court similarly took no steps to ensure that Bonnie was afforded due process.

At the January 2013 hearing, Bonnie's attorney stated to the court that he had previously raised his lack of communications with Bonnie at the December 2012 hearing. As noted, he reported at the January 2013 hearing that he had not communicated with Bonnie since February 2012. But the court did not ask counsel why he could not communicate with her in jail or how he was able to represent her at the October 2012 termination hearing if he had not communicated with her. Moreover, the court's termination order stated that a copy was sent to Bonnie at an address in Edgar, Nebraska, and Bonnie asked for a new attorney 1 day after the court issued its order. But nothing in the record shows that her attorney had tried to reach her in jail or at her address in Edgar.

It is true that we held in *In re Interest of A.G.G.*[11] that after a court has acquired jurisdiction over a parent and appointed counsel, the parent has an obligation to keep the attorney and the court informed of his or her whereabouts. There, we concluded that termination of a mother's parental rights did not violate due process despite her absence from the hearing. But the circumstances of that case were different. Although the mother had avoided service, she had actual notice of the termination proceeding and nonetheless informed the caseworker that she would not attend. The State had made diligent efforts to serve her with notice. Most important, the mother was represented by counsel, who moved to dismiss the proceedings for lack of jurisdiction. In fact, the trial court appointed that attorney after it allowed the mother's previous attorney to withdraw because he could not communicate with her about the termination proceeding.

In contrast, here we cannot conclude that the parent has avoided service or refused to attend the hearing despite having actual notice. The court's order suggests that Bonnie was not in jail when the court issued its order on January 17, 2013. But we do not know whether she was still in jail during the

---

[11] See *In re Interest of A.G.G.*, 230 Neb. 707, 433 N.W.2d 185 (1988).

January 4 hearing. We are equally concerned that because Bonnie's attorney had represented her without her attendance at many hearings, she would have believed that he would continue to do so.

Under Neb. Ct. R. of Prof. Cond. § 3-501.3, a lawyer must act with reasonable diligence and promptness in representing a client. Comment 4 explains that diligence includes continuing the representation unless the lawyer has complied with the rule for termination of representation, particularly when the client has reason to believe that the lawyer will continue to serve the client's interests:

> Unless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client. If a lawyer's employment is limited to a specific matter, the relationship terminates when the matter has been resolved. If a lawyer has served a client over a substantial period in a variety of matters, the client sometimes may assume that the lawyer will continue to serve on a continuing basis unless the lawyer gives notice of withdrawal. Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so.

Bonnie's mistaken reliance on her attorney creates our concern here. Because Bonnie's attorney had represented her at many hearings, including the first termination hearing, without her appearance, she could have reasonably believed that he would also represent her at the continued hearing. So we conclude that a juvenile court should not permit an attorney to withdraw from representing a parent at a termination hearing for lack of communication unless the attorney shows that he or she has provided notice of an intent to withdraw or made diligent efforts to do so.

Under Neb. Ct. R. of Prof. Cond. § 3-501.16(b), a lawyer may withdraw from representing a client only if the lawyer offers a specified reason for withdrawal and shows that he has complied with notice laws or obtained the court's permission

to terminate the representation. A lawyer must "take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client [and] allowing time for employment of other counsel."[12] A court should consider whether withdrawal could be accomplished without a material adverse effect on the client's interests.[13]

[7] Indigent parents in juvenile proceedings have a statutory right to an attorney because they have fundamental rights at stake. Because of those rights, we hold that a juvenile court may not assume that a parent has avoided communications with his or her attorney unless the attorney shows that he or she has made diligent efforts to serve notice to the parent of the attorney's intent to withdraw from the representation. As this case illustrates, without a requirement that the attorney show proof of service of an intent to withdraw, a court may not know all the relevant circumstances of the parent's whereabouts or whether the attorney has in fact made diligent efforts to contact the client.

[8] We cannot conclude that Bonnie irresponsibly avoided her attorney when her parental rights were at stake, rather than assuming that he would continue to represent her as he had at the October 2012 termination hearing. Absent circumstances showing that a parent has avoided contact with his or her attorney, a juvenile court must respect the parent's due process right to representation by an attorney.

## CONCLUSION

After reviewing for plain error, we conclude that the court's procedures denied Bonnie due process at the termination hearing. We therefore vacate the court's order and remand the cause with direction to conduct a new termination hearing.

VACATED AND REMANDED WITH DIRECTION.

---

[12] § 3-501.16(d).

[13] See § 3-501.16(b)(1).