PRIME REALTY DEVELOPMENT, INC., A NEBRASKA CORPORATION, APPELLANT, V. CITY OF OMAHA, A NEBRASKA MUNICIPAL CORPORATION, APPELLEE.

602 N.W.2d 13

Filed November 5, 1999. No. S-98-615.

Thomas E. Whitmore and Sandra K. Markley, of Monen & Whitmore, for appellant.

Paul D. Kratz, Omaha City Attorney, and Charles K. Bunger for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Prime Realty Development, Inc. (Prime Realty), brought suit against the City of Omaha (City) alleging that the City, among other things, violated art. I, § 3, of the Nebraska Constitution in removing a blighted designation from land owned by Prime Realty without due process. Both parties filed motions for summary judgment, and the district court granted summary judgment in favor of the City. Prime Realty appeals.

## FACTUAL BACKGROUND

Spring Valley Industrial Park, owned by Prime Realty, is located on approximately 35 acres between 50th and 60th Streets in Omaha, Nebraska. In 1988, pursuant to Neb. Rev. Stat. § 18-2109 (Reissue 1991) of the Community Development Law, the City declared 217 acres located between 50th and 60th Streets, including the tract where the industrial park would later be built, as blighted. Blighted land, as currently defined by Neb. Rev. Stat. § 18-2103(11) (Reissue 1997), is land that constitutes an economic or social liability and meets at least one of several criteria set out in § 18-2103(11)(b)(i) through (v). Once an area is declared blighted, the City can fashion a redevelopment plan, including special financial incentives, to encourage commercial development within the blighted area.

Tax increment financing (TIF) is one of the financial incentives the City uses to develop blighted areas. Developers submit an application for TIF, which is then reviewed by the "TIF Committee" and either approved or denied. TIF funds are essentially a loan granted by the City to the developer to assist with the costs of the proposed development. The developer is not required to repay TIF funds. Instead, the loan is paid back over time by the increased tax base created by the new commercial development.

Prime Realty first began developing the industrial park in 1989. The Spring Valley Industrial Park Redevelopment Plan II, approved by the City, allowed for 75 percent from TIF funds and 25 percent financing from Prime Realty. The initial development required significant infrastructure additions, including extending and improving the sewer system and storm drainage and making street improvements. The City approved $702,250 in TIF funds for this project.

In 1991, Prime Realty made a further request to the City regarding the granted TIF funds. As of that date, $562,220 of the $702,250 approved for the initial development had been expended. Prime Realty requested that the remaining $140,029 be used to cover a portion of the grading and site preparation expenses which arose after a large corporation agreed to move into the industrial park. The City approved this amended use of the funds.

In 1992, the City reevaluated the status of all blighted areas within Omaha. On February 23, 1992, the City published notice in the Omaha World-Herald that one of the items on the agenda for the March 4 Omaha city planning board meeting was the repeal of all blighted designations in the City, and the establishment of new blighted areas. On June 2, 1992, the City formally withdrew the blighted designation from all previously designated properties, including the industrial park, and assigned new blighted areas within the City.

In early 1993, Prime Realty began negotiating with Coca-Cola Enterprises, Inc. (Coca-Cola), regarding the relocation of Coca-Cola's existing operations to the industrial park, at the City's request. During negotiations Prime Realty, Coca-Cola, and the City all contemplated the use of TIF funds to assist with

the project. In December 1993, Coca-Cola purchased 13.06 acres within the industrial park.

In 1994, Prime Realty submitted a new application for TIF funds regarding the Coca-Cola project. On May 31, the TIF Committee met. The committee denied Prime Realty's request for $164,766, and instead approved TIF funds for two other projects. The committee noted in its minutes regarding Prime Realty's application that "[w]ith the improvements in place at the 50th and Dayton location, the project will not qualify for consideration as a Blighted and Substandard Area."

At Prime Realty's request, the City reevaluated the industrial park in October 1994. The resulting report also concluded that the improved property no longer qualified as a blighted area based on the statutory criteria set out in § 18-2103(11). In 1995, Prime Realty instituted this action against the City.

In 1998, the matter was heard before the district court for Douglas County on motions for summary judgment by both parties. The court sustained the City's motion for summary judgment, finding that Prime Realty had no property interest in the blighted designation conferred by the City and that thus, there was no due process violation. In the alternative, the court found that if Prime Realty did have a property interest in the blighted designation, the City gave Prime Realty proper notice and an opportunity to be heard.

Prime Realty's motion for summary judgment was overruled. Prime Realty appealed, and we moved the case to our docket pursuant to our authority to regulate the caseloads of Nebraska appellate courts. Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Prime Realty asserts that the trial court erred in (1) determining that the blighted designation could be removed from the industrial park without providing notice and an opportunity to be heard and (2) finding in the alternative that the notice afforded by the City provided adequate due process.

## STANDARD OF REVIEW

█ Constitutional interpretation is a question of law, on which the Nebraska Supreme Court is obligated to reach a con-

clusion independent of the decision by the trial court. *Father Flanagan's Boys Home v. Dept. of Soc. Servs.*, 255 Neb. 303, 583 N.W.2d 774 (1998).

## ANALYSIS

 Prime Realty asserts that the trial court erred in finding that the City was not required to provide due process to Prime Realty when removing the blighted designation from the industrial park as part of a citywide reevaluation. Under article I, § 3, of the Nebraska Constitution, the state cannot deprive any person of life, liberty, or property without due process of law. The protections of this procedural due process right attach when there has been a deprivation of a significant property interest. *Howard v. City of Lincoln*, 243 Neb. 5, 497 N.W.2d 53 (1993), citing *Boddie v. Connecticut*, 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971). If a significant property interest is shown, due process requires notice and an opportunity to be heard that is appropriate to the nature of the case. *Blanchard v. City of Ralston*, 251 Neb. 706, 559 N.W.2d 735 (1997). We address Prime Realty's due process claim under state constitutional law only because Prime Realty did not raise any violation of federal due process under the 14th Amendment in its petition to the district court.

 Prime Realty asserts that the blighted designation, with the concomitant ability to apply for TIF funds, was the type of public benefit which triggers due process protection. In order to have a protected property interest, one must have a legitimate claim of entitlement. See *Tracy v. City of Deshler*, 253 Neb. 170, 568 N.W.2d 903 (1997). See, also, *Board of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

 Property interests for purposes of procedural due process are created, and their dimensions are defined, by existing rules or understandings that stem from an independent source such as state law. *Whitehead Oil Co. v. City of Lincoln*, 245 Neb. 680, 515 N.W.2d 401 (1994). See, also, *Ashby v. Civil Serv. Comm.*, 241 Neb. 988, 492 N.W.2d 849 (1992). We conclude that under this standard, for the reasons set forth below, Prime Realty had no significant property interest in the blighted designation.

■ In the Community Development Law, Neb. Rev. Stat. §§ 18-2101 to 18-2154 (Reissue 1991 & Cum. Supp. 1994), there are no notice or statutory requirements set out for removing a blighted designation. Nothing in the statutory scheme suggests that a blighted designation is permanent. Further, nothing in the statutory scheme requires that an area be declared blighted, even if it meets all of the statutory criteria. Based on the above, we conclude that the decision to remove a blighted designation is left within the City's discretion. Only when a statute or ordinance eliminates the decisionmaking power of a city, by making the city's obligation to act mandatory when a party fulfills the requirements of the statute, is a significant property interest created. See *Tracy v. City of Deshler, supra.* See, also, *North Memorial Medical Center v. Gomez,* 59 F.3d 735 (8th Cir. 1995); *Littlefield v. City of Afton,* 785 F.2d 596 (8th Cir. 1986), *abrogated on other grounds, Lemke v. Cass County, Neb.,* 846 F.2d 469 (8th Cir. 1987).

■ In *Tracy,* we held that a garbage hauler did not have a vested property right to a garbage hauling permit issued by the city. We noted that the statutory framework at issue in *Tracy* gave the city the discretion to revoke all permits issued to private garbage collectors. Thus, the city did not deprive the garbage hauler of a significant property interest when it revoked his garbage hauling license. Similarly here, the Community Development Law gives the City the discretion to remove blighted designations as it sees fit to best serve the sound needs of the community. See § 18-2104. When the City removed the blighted designation from the industrial park, as part of a city-wide reevaluation, it did not deprive Prime Realty of a significant property interest.

Prime Realty asserts that it had a legitimate claim of entitlement to TIF funds. However, the record makes clear that the decisionmaking process regarding TIF applications is a discretionary process. Even if the TIF application filed by Prime Realty to assist with the Coca-Cola project had met all of the necessary criteria, the TIF Committee was free to deny the application in favor of other projects which it deemed more worthy. Prime Realty was never granted TIF funds for the Coca-Cola project, nor was there ever a guarantee from the City that

78

Prime Realty's TIF application would be approved for this project. Thus, Prime Realty had no legitimate claim of entitlement to TIF funds.

We conclude that Prime Realty did not have a significant property interest in the blighted designation. Prime Realty was not entitled to notice and an opportunity to be heard under article I, § 3, of the Nebraska Constitution regarding the removal of a blighted designation. Having made this determination, we find it unnecessary to reach Prime Realty's second assignment of error.

## CONCLUSION

The decision of the trial court granting summary judgment to the City and overruling Prime Realty's motion for summary judgment is affirmed.

AFFIRMED.