IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF JACE B.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF JACE B., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

CHRISTINA B., APPELLANT.

Filed September 21, 2021.    No. A-21-225.

Appeal from the Separate Juvenile Court of Douglas County: VERNON DANIELS, Judge. Affirmed.

Melissa M. Oestmann, of Oestmann & Albertsen Law, P.C., L.L.O., for appellant.

Donald W. Kleine, Douglas County Attorney, Cara Stirts, and Zachary Severson, Senior Certified Law Student, for appellee.

Shannon Prososki, guardian ad litem.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

PIRTLE, Chief Judge.

INTRODUCTION

Christina B. appeals from an order of the Separate Juvenile Court of Douglas County terminating her parental rights to her child, Jace B. Upon our de novo review of the record, we affirm the juvenile court's order.

BACKGROUND

On April 10, 2018, a second supplemental petition was filed alleging Jace was within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) because he lacked proper care by reason

- 1 -

of the faults or habits of Christina. The petition further alleged that (A) Christina's use of drugs placed Jace at risk for harm; (B) Christina failed to provide proper parental care, support, and/or supervision to Jace; (C) Christina failed to provide a safe, stable, and/or an appropriate house for Jace; and (D) for the above reasons, Jace was at risk for harm. An ex parte motion for immediate custody was filed the same day and the court entered an order giving the Department of Health and Human Services (DHHS) temporary custody of Jace for placement in foster care. Jace was only a day old when he was removed from Christina's care and has remained out of the home since that time.

On June 4, 2018, the court entered an adjudication order finding that Christina had pled no contest to counts (C) and (D) in the petition and stipulated to a chemical dependency evaluation. The court found that counts (C) and (D) were true by a preponderance of the evidence, dismissed counts (A) and (B), and found Jace to be within the meaning of § 43-247(3)(a). Christina was ordered, among other things, to obtain and maintain safe, stable, and adequate housing; obtain and maintain a legal, stable source of income; complete a budget and timely supplements; submit to random urinalysis testing; submit to a chemical dependency evaluation within 30 days; submit to a psychological evaluation within 30 days; and have supervised visitation in a neutral location.

On October 29, 2019, the State filed a motion for termination of Christina's parental rights, alleging statutory grounds to terminate existed pursuant to Neb. Rev. Stat. § 43-292(2), (6), and (7) (Reissue 2016), and alleging that termination was in Jace's best interests. A termination trial was held over the course of 4 days between March 9, 2020, and February 4, 2021.

On the first day of trial, Danielle Kessler, executive director of Paradigm Incorporated, testified. She testified that she supervises employees who provide parenting time, family support, and intensive family preservation services to families. She first received a referral for Christina and her son, Brandon B., in June 2016 to provide supervised parenting time. In November 2016, Paradigm was also asked to provide family support work for Christina in regard to Brandon. The family support referral was closed in March 2017 and the parenting time referral was closed in August 2017. Christina was unsuccessfully discharged from both for lack of compliance.

Kessler testified that in August 2019, she received a new referral to provide supervised parenting time for Christina and Jace. Between August 2019 and February 2020, Christina was offered 26 visitations with Jace and she attended 20.

Bonnie Jolly, who works for Paradigm, testified that she started supervising parenting time between Christina and Jace in August 2019. At the time of Jolly's testimony, she was still supervising visits. She testified that before the referral to Paradigm, there had been a previous referral to another agency that was terminated. The visits Jolly supervised were once per week and lasted 2 hours. Jolly estimated there have been 24 scheduled visits and Christina has missed 6 of them.

Jolly stated that Jace gets excited when he is told he is going to a visit with Christina and when he sees her. He also gets disappointed and upset when Christina does not show up for a visit. She testified that it is detrimental to Jace when Christina misses visits and it hurts him emotionally.

Jolly testified that Christina brings toys and food for Jace and is very prepared during visits. She also stated that Christina interacts with Jace throughout the visits. Jolly stated that on two occasions she recommended to the caseworker that Christina's visitation time be increased so she

could see how Christina would handle having more time with Jace. Her recommendation had not been approved by the caseworker.

Jolly testified about an incident that occurred at Christina's home in December 2019. Jolly went to Christina's home to see if she was going to attend her visit with Jace. When Christina answered the door, she was upset and stated that she was going to skip the visit. She told Jolly that she was frustrated and wanted to shoot the foster parents. She further indicated that she had the ability to shoot them because she had a gun. Jolly called the police to report the threat and contacted the foster parents.

Sarah Valentine, a drug screening and testing manager for Owens and Associates, testified that she received a referral on December 31, 2019, to provide urinalysis testing for Christina. Owens and Associates discharged Christina on February 27, 2020, for failure to comply with testing. Valentine testified that during the time she was overseeing Christina's urinalysis testing, Christina was asked to submit to testing 16 times and she only tested once. The one test, provided in January 2020, tested positive for tramadol and methamphetamine.

Jeremy Muckey-Shirk was the final witness to testify on the first day of trial. He testified that he became Jace's foster parent on April 17, 2018. He brought Jace home from the hospital after he was born and Jace has not left his care since. Muckey-Shirk had also been Brandon's foster parent. Brandon was placed with him in August 2016, when he was almost 10 years old, and Muckey-Shirk adopted him in September 2018.

Muckey-Shirk testified that Christina has not consistently attended visits during the time he has had custody of Jace. He also testified that it has been difficult to communicate with Christina the entire time he has had Jace, which was concerning because Jace has dietary issues and his food consumption needed to be tracked, specifically what new foods he was trying. Muckey-Shirk testified that initially they tried to communicate by text messages or at family team meetings, and later by a notebook that was sent back and forth. He testified that the notebook would often not be returned, and when it was returned, there would only be one or two words written by Christina. Muckey-Shirk testified that Christina has attended two doctors' appointments for Jace.

He also testified that there were a few months where Jace would come back from visits with excessive amounts of baby powder on him which was concerning because he had aspiration and respiratory problems. At other times, Jace would return from visits wearing clothes that smelled of cigarette smoke, or have excessive amounts of Vick's VapoRub on him. These concerns were communicated to Christina, but there was no change for several months.

Muckey-Shirk testified that Christina has threatened him twice. The most recent threat was in December 2019 when Christina told Jolly that she wanted to shoot the foster parents. The first threat occurred in the spring 2017 when he was Brandon's foster parent. Muckey-Shirk testified that Christina called him a "gay child thief" and stated that Brandon was not safe with him and she would prevent Brandon from being with him by whatever means possible.

At the end of trial the first day, the court found there was a danger to Jace with respect to visitation based on the threat Christina made against the foster parents. It entered an order suspending Christina's visitation.

Trial resumed on May 29, 2020, and the State called Libby Garrett, Jace's caseworker since October 2019. Garrett testified that when she was first assigned Jace's case she met with the

previous caseworker, her supervisor, the foster parents, and Christina. She also reviewed the history of the case, including previous reports and documentation.

Garrett testified that Jace initially came into the custody of DHHS because Christina tested positive for drugs at a prenatal appointment and Jace tested positive for drugs when he was born. Garrett also stated that she was familiar with Brandon's case and that Christina relinquished her parental rights to Brandon after a motion to terminate her rights to Brandon was filed.

Garrett testified about the court orders in place for Christina at the time, which were the same orders set forth initially in the adjudication order, with two additional requirements. Christina had now been ordered to participate in "DBT" therapy and complete a parenting assessment.

Garrett testified that she and Christina prepared a budget and she did not believe Christina had the necessary means to provide for herself and Jace because she had never provided any employment verification. Garrett testified that there was nothing in the case file to show Christina had ever had a legal source of income during the case. Garrett stated that Christina had maintained housing, but it had not been determined to be safe housing. Garrett had not done a walkthrough of Christina's home because she was concerned for her own safety based on Christina's past behavior, specifically because she threatened the foster parents and had also brought a pocket knife on a visit. She also explained that Christina's failure to participate in urinalysis testing was concerning because she did not know if Christina would be sober if she went to her house. Garrett testified that Christina had completed a chemical dependency evaluation and a psychological evaluation, but had not followed the recommendations, which included DBT therapy and urinalysis testing.

Garrett testified that Christina's visits with Jace throughout the case have been supervised visits. She also testified that Christina had been unsuccessfully discharged from two different visitation services prior to Paradigm and had an incident report with Paradigm that caused the court to suspend her visits temporarily.

Garrett also testified Christina had not completed a parenting assessment, despite Garrett's help to get it done. She testified that during a family team meeting in November 2019, she provided Christina with names, phone numbers, and addresses of multiple doctors that could do a parenting assessment. Garrett also provided Christina with names of therapists for DBT therapy. She has never received a certificate of completion for that requirement. Since the November 2019 team meeting, Garrett had minimal contact with Christina. She either was not able to reach her or when she did have contact it was not for more than a few minutes at a time. Christina had also only attended one other team meeting since the November 2019 team meeting. It was conducted over Zoom and she left after 3 minutes and did not return.

Garrett testified that in her opinion it was in Jace's best interests to terminate Christina's parental rights. Garrett stated that her opinion was based on Christina's lack of compliance with urinalysis testing, lack of participation in DBT therapy, failure to complete a parenting assessment, lack of communication, inconsistency with supervised visitation, incident reports from visitation, and the length of time Jace had been out of the home.

Garrett's testimony continued on the third day of trial, November 19, 2020. She testified that the original intake for Brandon was due to an unsanitary home and Christina was unable to provide safe and stable housing for Brandon throughout the duration of the case. She testified that this was concerning because the same circumstances that brought Brandon into DHHS' custody,

brought Jace into DHHS' custody. The housing issue was never alleviated in Brandon's case and continues to be an issue in Jace's case.

Garrett also testified that Christina failed to consistently participate in services offered by DHHS during Brandon's case. And further, the majority of the services ordered for Christina in Jace's case are the same as those ordered in Brandon's case.

Garrett testified that she does not have any proof that Christina had participated in any kind of drug treatment, which had been recommended based on the chemical dependency evaluation. Further, Christina had submitted to only one urinalysis test since Garrett was assigned the case in October 2019 and it was positive for drugs. Garrett testified that Christina had undergone a psychological evaluation but had not followed through with the recommendations for DBT therapy and family support work. Garrett testified that since her previous testimony in May 2020, Christina had provided a few pay stubs in October 2020 showing proof of employment. However, Garrett did not have confirmation that Christina had maintained that employment. She further testified that Christina had not been consistently employed during this case.

In regard to visits with Jace, Garrett testified that visits were reinstated in May 2020 after being suspended due to Christina threatening the foster parents, but were only visits by video due to safety concerns. Christina was inconsistent in attending the video visits, missing at least eight visits. Garrett testified that Christina has not consistently participated in visitation throughout the case and that more than one referral for visitation had been made because visitation services had been unsuccessfully discharged.

Garrett testified that in order to assess the safety of the home, walk-throughs of the home need to take place. She testified that there had been at least three walk-throughs completed of Christina's home and other walk-throughs scheduled but ultimately not allowed by Christina. Garrett testified that she had not performed a walk-through since January 2020 because she did not feel safe going to Christina's house after Christina threatened the lives of the foster parents in December 2019 and Christina was not complying with urinalysis testing causing uncertainty regarding her behavior. She also testified that Christina told her she had moved to Missouri in August 2020.

Garrett's testimony concluded on the last day of trial, February 4, 2021. She testified that since the last trial date, she had received pay stubs from Christina showing proof of employment. She testified that Christina had attended four or five family team meetings since December 2019. Also since December 2019, Garrett had five to seven virtual contacts with Christina and during those contacts they discussed the court orders and Christina indicated she understood what she needed to do.

Garrett testified that Christina's move to Missouri made it more difficult for her to participate in services. She has tried to maintain contact with Christina since she moved, but Christina often does not respond and Garrett has gone months without speaking to Christina. She also testified that since May 2020, Christina has not asked her for help in obtaining services or expressed problems with or an inability to obtain services. Garrett testified that it was still her opinion that terminating Christina's parental rights was in Jace's best interests.

Following trial, the court entered an order finding Jace to be within the meaning of § 43-292(2), (6), and (7) by clear and convincing evidence and that it was in Jace's best interests to terminate Christina's parental rights.

ASSIGNMENTS OF ERROR

Christina assigns that the juvenile court erred in (1) failing to find that termination of her parental rights violated her due process rights; (2) finding that the State proved by clear and convincing evidence that statutory grounds existed to terminate her rights based on § 43-292(2), (6), and (7); and (3) finding that the State proved by clear and convincing evidence that termination was in Jace's best interests.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019).

ANALYSIS

*Violation of Due Process.*

Christina first assigns that the juvenile court erred in failing to find that her due process rights were violated. The right of parents to maintain custody of their child is a natural right, subject only to the paramount interest which the public has in the protection of the rights of the child. *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004). The fundamental liberty interest of natural parents in the care, custody, and management of their child is afforded due process protection. *Id.* While the concept of due process defies precise definition, it embodies and requires fundamental fairness. *Id.* State intervention to terminate the parent-child relationship must be accomplished by procedures meeting the requisites of the Due Process Clause. *In re Interest of Mainor T. & Estela T., supra.*

Christina correctly asserts that she is entitled to procedural due process in connection with the termination of her parental rights proceeding. In the context of both adjudication and termination hearings, the Nebraska Supreme Court has stated that

> """[p]rocedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker."""

*In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 906-07, 782 N.W.2d 320, 326 (2010), quoting *In re Interest of Mainor T. & Estela T., supra*.

Christina had notice of the motion to terminate her parental rights as well as the termination hearing. She was represented by counsel throughout the entire case, even though there were several attorneys who withdrew from their representation of Christina. She was given a full evidentiary hearing with a reasonable opportunity to refute or defend against the accusations and a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence. Her counsel

cross-examined all the State's witnesses and had the opportunity to present evidence but rested after the State's case-in-chief. Christina does not allege, nor is there any indication, that the judge was not impartial.

Christina argues, however, that her due process rights were violated because Jace was adjudicated based on the allegation that she had failed to provide safe and stable housing for Jace, placing him at risk of harm; yet the termination trial "focused heavily on her drug testing and her failure to eliminate concerns that were not adjudicated in the first place." Brief for appellant at 17. Christina's drug use as well as other "concerns," although not a reason for adjudication, were relevant because she had tested positive for drugs while pregnant with Jace and he tested positive after he was born. The drug use relates indirectly to her failure to provide a safe, stable, and appropriate housing. She also stipulated to a chemical dependency evaluation at the time of adjudication making her drug use an obvious concern. The other evidence at the termination hearing related to the requirements the court had ordered in the case plans to help Christina work toward reunification, and her progress or lack of progress in regard to those orders.

Christina also contends that her due process rights were violated because Jolly, who supervised her visits with Jace and was the only person who knew about their relationship, did not testify that termination was in Jace's best interests. A best interest opinion was not required or necessary from Jolly and there was testimony from Garrett, who had been the caseworker since October 2019, that termination was in the best interests. There was also testimony from other witnesses to support the same conclusion.

We conclude that Christina was afforded due process in connection with the termination of parental rights proceeding. We find no merit to the specific arguments she makes in regard to why her due process rights were violated. Her first assignment of error fails.

*Statutory Grounds for Termination.*

Christina next assigns that the juvenile court erred in finding the State proved by clear and convincing evidence that statutory grounds existed to terminate her rights. For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that such termination is in the child's best interests. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). The State must prove these facts by clear and convincing evidence. *Id.*

The juvenile court found that the State had presented clear and convincing evidence to satisfy § 43-292(2), (6), and (7). Section 43-292(7) allows for termination when the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. It operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Becka P. et al., supra.* In a case of termination of parental rights based on § 43-292(7), the protection afforded the rights of the parent comes in the best interests step of the analysis. *In re Interest of Becka P. et al., supra.*

Here, it is undisputed that Jace has been in out-of-home placement for 15 or more months of the most recent 22 months. Jace was removed from Christina's care when he was released from the hospital after he was born in April 2018. At no time has he been returned to Christina's care. The State filed its motion for termination of parental rights on October 29, 2019, and the termination trial was held between March 9, 2020, and February 4, 2021. When the motion for

termination was filed, Jace had been out of the home for about 18 months. By the last day of trial on February 4, 2021, Jace had been out of the home for over 33 months. Thus, the statutory requirement for termination under § 43-292(7) has been met.

If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Becka P. et al., supra.* Because we conclude that the State presented clear and convincing evidence that grounds to terminate existed under § 43-292(7), we need not address the other statutory grounds.

*Best Interests.*

Christina assigns that the juvenile court erred in finding that it was in the child's best interests to terminate her parental rights. In addition to proving a statutory ground, the State must show that termination of parental rights is in the best interests of the child. *In re Interest of Becka P. et al., supra.*

A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must show that the parent is unfit. *Id.* There is a rebuttable presumption that the best interests of the child are served by having a relationship with his or her parent. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proven that the parent is unfit. *Id.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id.*

The best interests' analysis and the parental fitness analysis are fact-intensive inquiries. And while both are separate inquiries, each examines essentially the same underlying facts. *Id.* In proceedings to terminate parental rights, the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *Id.*

In cases where termination of parental rights is based on § 43-292(7), the Supreme Court has held that appellate courts must be particularly diligent in their de novo review of whether termination of parental rights is in fact in the child's best interests. *In re Interest of Becka P. et al., supra.* The evidence adduced to prove termination on any statutory ground other than § 43-292(7) is highly relevant to the best interests of the juvenile, as it would show abandonment, neglect, unfitness, or abuse. See *In re Interest of Shelby L.*, 270 Neb. 150, 699 N.W.2d 392 (2005).

Christina argues that the State failed to prove by clear and convincing evidence that terminating her rights was in Jace's best interests because Garrett, the caseworker, was the only witness to testify regarding best interests, and Garrett's testimony was mostly about Christina's progress rather than testimony about how terminating her rights would affect Jace. In support of her argument, Christina relies on *In re Interest of Eden K. & Allison L.*, 14 Neb. App. 867, 717 N.W.2d 507 (2006), which held that the State cannot use the caseworker "'as a proxy for all of the other witnesses whose expertise and testimony would have been helpful, and perhaps essential, in determining what was in [the child's] best interests.'" *Id.* at 878, 717 N.W.2d at 515, quoting *In*

*re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). In *In re Interest of Eden K. & Allison L.*, two caseworkers who had been assigned to work with the mother and children were the only witnesses to testify and one of them testified that termination was in the children's best interests. This court noted that the State presented no testimony from the children's therapists or foster parents and further stated that the State essentially presented no evidence whatsoever concerning the needs or interests of the children. We concluded that the juvenile court erred in concluding that there was clear and convincing evidence that termination of the mother's parental rights was in the children's best interests.

Christina also relies on *In re Interest of Dylan Z.*, 13 Neb. App. 586, 697 N.W.2d 707 (2005), in arguing that the State's evidence was insufficient to prove termination was in Jace's best interests. In that case, only the protection safety worker testified that termination of the father's parental rights was in the child's best interests and his opinion was based on four specific factors. We concluded that the specific factors the caseworker used to reach her opinion did not support a finding by clear and convincing evidence that termination was in the child's best interests.

In the present case, unlike *In re Interest of Eden K. & Allison L., supra*, and *In re Interest of Dylan Z., supra*, the caseworker was not the only witness to testify and she was not used as a proxy for other witnesses. There was testimony presented from Kessler, the executive director or Paradigm Incorporated; Jolly, who supervised visits between Christina and Jace; Valentine, who oversaw Christina's urinalysis testing; and Muckey-Shirk, Jace's foster parent. There was evidence from these witnesses in regard to Christina's progress or lack thereof in achieving the court ordered requirements, as well as testimony regarding Jace's needs.

The evidence presented through the testimony of these witnesses showed that in the nearly 3 years since Jace was removed from Christina's case, Christina has failed to put herself in a position to properly parent her child. The court orders in the case plans have remained the same throughout the case and Christina has failed to consistently and completely comply with the court's orders and failed to make any significant progress toward reunification. Jace was initially removed from Christina's care because she tested positive for drugs while she was pregnant and Jace tested positive after he was born. Christina has been ordered to comply with urinalysis testing, but she has failed to comply throughout the case. The one time she did test, she tested positive for drugs. She has also failed to comply with other court orders, including obtaining and maintaining safe, stable housing; obtaining and maintaining a legal, stable source of income; participating in DBT therapy; participating in a parenting assessment; attending family team meetings; and consistently attending supervised visits. She has threatened to shoot the foster parents and brought a pocketknife to a visit.

As far as housing, Garrett testified that Christina has maintained housing, but it had not been determined to be safe because she had not performed a walk-through since January 2020 because she was concerned for her own safety. Her concern was based on Christina threatening to shoot the foster parents and her failure to comply with urinalysis testing.

In regard to Christina's visits with Jace, she has never been able to move past supervised visits and they have never been allowed to occur in her home. She has been inconsistent with visits and had two different visitation services discharge her as a result.

She failed to cooperate with the foster parents in that she would not track Jace's food, despite his dietary and respiratory issues. Her communication with the foster parents had gone from little communication to almost none. Jace would also return from visits with Christina covered in baby powder, dressed in clothing that smelled of cigarette smoke, and covered in excessive amounts of Vicks VapoRub, all of which were concerning due to Jace's respiratory issues. Jolly testified that Jace would get excited for visits with Christina and would also be disappointed and upset when Christina failed to show up for a visit. She testified that Christina was always prepared for visits and interacted with Jace, but the visit was only for 2 hours once a week.

Christina also moved to Missouri in August 2020, making it more difficult for her to participate in services. Garrett testified that she has tried to maintain contact with Christina but she often does not respond, and Garrett had gone months without speaking to Christina.

Jace was Christina's second child to be adjudicated based on her failure to provide safe and stable housing. This issue was not resolved in Brandon's case and this issue has not been alleviated in the present case. Many of the court ordered requirements in Jace's case were the same requirements Christina was ordered to complete in Brandon's case. Christina ultimately relinquished her parental rights to Brandon. In regard to previous relinquishments, the Supreme Court has held that they

> "do not bode well for [the parents'] stability and ability as parents, and they serve to convince us that [the current juvenile] is at risk. The fact that a parent has previously relinquished an adjudicated child is relevant evidence in an adjudication proceeding concerning a child born soon thereafter. In short, given the purpose of the juvenile code, one's history as a parent is a permanent record and may serve as a basis for adjudication depending on the circumstances."

*In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 908, 782 N.W.2d 320, 327 (2010). Christina continues to struggle with the same issues in Jace's case as she did in Brandon's case.

Jace has been in foster care for over 3 years and Christina has not shown a willingness to rehabilitate herself so she can have Jace returned to her care. Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Zanaya W. et al.*, 291 Neb. 20, 863 N.W.2d 803 (2015).

We find there was clear and convincing evidence to show that Christina was unfit and that terminating her parental rights was in the child's best interests.

CONCLUSION

We conclude the juvenile court did not err in failing to find that Christina's due process rights were violated. We also conclude the State proved by clear and convincing evidence that grounds for termination of Christina's parental rights existed under § 43-292(7) and that termination of her parental rights was in the children's best interests. Accordingly, the juvenile court's order is affirmed.

AFFIRMED.